UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ZEFFLIN SCHWARTZ,

               Petitioner,               Case No. 1:14-cv-715

v.                                      Honorable Robert Holmes Bell

LLOYD RAPELJE,

               Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner David Zefflin Schwartz presently is incarcerated at the Saginaw Correctional Facility. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of second-degree home invasion, MICH. COMP. LAWS § 750.110a(3). On October 27, 2011, he was sentenced as a fourth felony offender, MICH. COMP. LAWS § 769.12, to a prison term of 6 to 30 years.

Petitioner appealed his conviction to the Michigan Court of Appeals, raising four grounds for relief: (1) the court improperly denied an instruction on the lesser-included offense of third-degree home invasion; (2) Petitioner's co-defendant lied under oath by testifying that he did not have a deal to testify against Petitioner, the prosecutor committed misconduct by not revealing the misrepresentation, and Petitioner's attorney was ineffective in failing to object; (3) the jury was denied the opportunity to view the crime scene; and (4) Petitioner was denied a timely preliminary examination. Petitioner does not provide an outline of the facts underlying his conviction, but the Michigan Court of Appeals described those facts as follows:

> Defendant's conviction arose out of incidents that occurred in September 2010, while defendant was with Felix Iginoef. According to Iginoef's testimony, he and defendant needed money to purchase drugs and decided to break into the residence of a woman who occasionally employed Iginoef. Iginoef testified that he kicked in the front door while defendant waited across the street, and then they both entered the residence. They stole several items, including electronics, some prescription medication, a "weedwhacker," and jewelry. They took the jewelry to a pawn shop, but after they were unable to pawn the jewelry, they returned to the residence and broke in a second time. Some youths playing across the street saw defendant and Iginoef's actions. The youths telephoned 9-1-1 after witnessing defendant and Iginoef return to the residence the second time. The police responded and subsequently arrested defendant and Iginoef.

(*Michigan v. Schwartz*, No. 307485, slip op. at 1 (Mich. Ct. App. Jan. 29, 2013), http://publicdocs. courts.mi.gov:81/opinions/final/coa/20130129_c307485_56_307485.opn.pdf (last visited July 25,

2014).) In its January 29, 2013 unpublished opinion, the court of appeals rejected all appellate arguments. Petitioner sought reconsideration, which was denied on March 22, 2013. Petitioner then filed an application seeking leave to appeal to the Michigan Supreme Court, raising the same four grounds. The supreme court denied leave to appeal on September 3, 2013.

In his habeas application, Petitioner raises only the second issue presented to the state courts. He attaches as his habeas brief the relevant portion of his brief filed in the Michigan Court of Appeals. The brief states the issue as follows:

> THE PROSECUTOR DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL BY FAILING TO REVEAL THE COMPLETE PLEA AGREEMENT WITH THE ACCOMPLICE-WITNESS FOR HIS TESTIMONY THEREBY MISLEADING THE JURY REGARDING THE WITNESS'S CREDIBILITY; IN THE ALTERNATIVE, TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY CROSS EXAMINE THE WITNESS ON THIS ISSUE. US CONST AM XIV.

(Attach. to Pet., docket #1-1, Page ID#26.)

## **Discussion**

### I. Standard of Review

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent "at the time of the state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively

unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 131 S. Ct. at 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

    II.    <u>Prosecutorial Misconduct and Ineffective Assistance</u>

In his brief, Petitioner argues that his co-defendant, Felix Iginoef, was the principal actor in the underlying offense. Petitioner does not dispute the state-court's summary of the evidence presented at trial. He claims, however, that he should not have been convicted of the serious charge of second-degree home invasion or sentenced to such a long prison term, because it was Iginoef, not Petitioner, who knew the victim, determined that she was not at home, and broke down the door.

Petitioner claimed that he had not entered the house. Nevertheless, just prior to the preliminary examination, Petitioner offered to cooperate with the prosecutor to testify against Iginoef in exchange for a plea deal. The prosecutor made a plea offer to Petitioner, under which Petitioner would plead guilty to second-degree home invasion and the prosecutor would dismiss the fourth-felony-offender supplement. Petitioner rejected the plea offer, but he made it known that he would plead guilty and testify with a better offer.

The prosecutor then approached Iginoef's counsel, making the same plea offer made to Petitioner. According to the passages quoted in Petitioner's brief, Iginoef appeared willing to accept a plea agreement, but further discussions remained ongoing. By the time of Petitioner's trial, Iginoef had pleaded guilty to third-degree home invasion and had been sentenced to probation. Iginoef testified against Petitioner, but denied that his testimony was required by his plea agreement.

Plaintiff complains that Iginoef's testimony – that his plea agreement was not conditioned on his testimony against Petitioner – clearly was false, given that Iginoef's charges had been reduced so dramatically and he had received such a light sentence. Petitioner claims that the prosecutor committed misconduct by permitting Iginoef to give false testimony. He also asserts that his attorney provided ineffective assistance of counsel in failing to cross-examine Iginoef about the plea negotiations and in failing to object to the misleading testimony.

### A. Prosecutorial Misconduct

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

>	The Michigan Court of Appeals addressed the issue as follows:
>
>>	Next, defendant argues the prosecutor engaged in misconduct by allowing Iginoef to testify that his plea agreement did not require him to testify against defendant. Additionally, defendant argues that his trial counsel was ineffective for failing to cross-examine Iginoef about the requirements of his plea agreement. Defendant did not object to the alleged prosecutorial misconduct at trial; therefore, this issue is not preserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant "failed to preserve this issue at trial, our review is actually for plain error that affected his substantial rights." *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001).
>>
>>	"Under MCR 6.201(B)(5), a prosecutor has a duty to disclose the details of a witness's plea agreement, immunity agreement, or other agreement in exchange for testimony." *McMullan*, 284 Mich App at 157. Moreover, "Michigan courts have... recognized that the prosecutor may not knowingly use false testimony to obtain a conviction, and that a prosecutor has a duty to correct false evidence." *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998). Here, however, there is no evidence of record that Iginoef's testimony against defendant was, in fact, part of Iginoef's plea agreement. Therefore, defendant has not shown prosecutorial misconduct regarding the plea agreement.

(*Michigan v. Schwartz*, No. 307485, slip op. at 3 (Mich. Ct. App. Jan. 29, 2013), http://publicdocs.courts.mi.gov:81/opinions/final/coa/20130129_c307485_56_307485.opn.pdf (last visited July 25, 2014).)

	As the Sixth Circuit recently summarized in *Peoples v. Lafler*, 734 F.3d 503, 515-16 (6th Cir. 2013),

>	"[t]he Supreme Court has long recognized that due process is denied where '[the] state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.'" *Brooks v. Tennessee*, 626 F.3d 878, 894 (6th Cir.2010) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791 (1935)). Deliberate deception is "incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). Relying on two predominant Supreme Court cases on prosecutorial misconduct – *Giglio* and *Napue v. Illinois*, 360 U.S. 264, 269–72, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1976) – we have fashioned a three-part test for determining whether there was a denial of due process through the use of false testimony:

> In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* (quoting *Brooks*, 626 F.3d at 894–95 (quoting *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998))).

As the court of appeals held, Petitioner fails to allege any facts supporting his claim that Iginoef's testimony was false. Although Iginoef pleaded guilty to third-degree home invasion and testified against Petitioner, he already had been sentenced to probation by the time he appeared at Petitioner's trial. Those circumstances do not, on their face, suggest that his sentence was conditioned on his subsequent testimony. In the absence of other facts – not merely argument – Petitioner cannot meet the first element of the Sixth Circuit test. As a consequence, the state court's rejection of Petitioner's prosecutorial-misconduct claim constituted a patently reasonable application of clearly established Supreme Court precedent.

### B. Ineffective Assistance of Counsel

Petitioner argues that his attorney rendered ineffective assistance of counsel by failing to object to Iginoef's testimony and failing to fully cross-examine Iginoef about his plea agreement. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court

considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficult of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . .") (citing *Richter*, 131 S. Ct. at 786).

Applying the *Strickland* standard, the state court rejected Petitioner's claim on the first prong of *Strickland*:

> [B]ecause there is no evidence of record that Iginoef testified against defendant as a condition of his plea agreement, defendant cannot demonstrate that his counsel was ineffective for declining to cross-examine Iginoef about the contents of the plea agreement.

(*Michigan v. Schwartz*, No. 307485, slip op. at 3 (Mich. Ct. App. Jan. 29, 2013), http://publicdocs.courts.mi.gov:81/opinions/final/coa/20130129_c307485_56_307485.opn.pdf (last visited July 25, 2014).)

The state-court's determination was patently reasonable. As previously discussed, Petitioner bears the burden of overcoming the strong presumption that his attorney's performance was a matter of sound strategy. *Strickland*, 466 U.S. at 689. Where, as here, Petitioner cannot demonstrate that the witness' testimony was false, he cannot overcome the presumption that counsel acted strategically in addressing other matters on cross-examination. He therefore falls far short of undermining the double deference accorded state-court findings on claims of ineffective assistance of counsel.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly

unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit hat service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: <u>August 18, 2014</u>                                   <u>/s/ Robert Holmes Bell</u>
                                                                 ROBERT HOLMES BELL
                                                                 UNITED STATES DISTRICT JUDGE